Case number 24-5030, USA v. Rene Gomez, oral argument 15 minutes per side. Ms. Coffin for the appellant. Ms. Coffin, good to see you again. You may begin. Good morning. Jennifer Coffin here on behalf of Mr. Ramirez Gomez. I'm reserving three minutes of my time. Thank There is no such thing as a sex offense without a conviction. A conviction is what makes a person a sex offender under the statute. A conviction is what triggers the registration requirement. And a conviction is what determines the duration of that registration requirement. No aspect of this legislative creature, a sex offense, functions without a conviction. So when the United States Sentencing Commission used SORNA's exact term in the guideline implementing SORNA and then defined it exactly as SORNA defines it, it transplanted into the guideline SORNA's requirement of a conviction. The commission didn't need to say any more than that to accomplish this purpose and indeed it certainly didn't say anything in the guideline to undermine the conclusion that this was what it meant. Because Mr. Ramirez Gomez has not been convicted in Indiana of a sex offense or in federal court of a sex offense, he's not subject to the eight level enhancement under the SORNA implementing guideline. And I welcome the court's questions. Doesn't sex offender and SORNA require a conviction where there is no definition in SORNA of sex offense in the same way? And shouldn't we thus treat them differently? I think I need you to restate your question. Sorry. So SORNA, you'll agree with me, uses both the term sex offender and sex offense. And it defines sex offender as having a conviction. That's right. But when we talk about committing a sex offense, just plain English, no one's going to think and in fact we've got all these cases and guideline provisions where we say they use conviction when they mean conviction and they use commit when they mean commit. And so why doesn't that distinction matter here? Well that's actually a great question. So in the statute where Congress defines the term sex offender to mean a person convicted of a sex offense, the word convicted there actually does work in addition to the fact that the term sex offense always refers to a conviction. No, because I thought it said convict. Well, I don't have it right here. It says a person convicted of sex offense. It says the term sex offender means an individual who is convicted of a sex offense. That's right. So sex offense doesn't intrinsically mean conviction because otherwise why would it say convicted of? I can tell you. It could have said, if you're right, wouldn't it have said it means an individual who committed a sex offense? That would also make sense. That's right, but it means something different when Congress says convicted there and this is what it is. Convicted actually adds two things, does work in two ways in there. The first way it does work is it says that it is a conviction that temporarily triggers the registration requirement. If it had said committed, which still would have meant conviction ultimately, if it said committed there, it would trigger the registration requirement at the time of the commission of the offense. It's a temporal limitation to say that you have to be convicted before you're required to register. The second work that conviction does there is it means a conviction that is still valid. So if a conviction has been set aside or vacated or the person's been pardoned based on innocence grounds, then it's not a conviction anymore. So it actually does additional work there other than just repeat sex offense. It just seems to me that's kind of odd when you're talking about sex offender and it's a person who's convicted of a sex offense and now you're asking us to import just sex offense into the guidelines. But you're saying it brings with it the other parts. Here's how we know it brings with it the requirement of a conviction. You can look at the definition of sex offense itself in subsection 5 of 34 U.S.C. 2911. In subpart B of that particular definition, which is what the commission explicitly adopts in the guideline, subsection B talks about foreign convictions. And it says a foreign conviction is not a sex offense if it doesn't meet the minimal requirements of fundamental fairness and due process as established by DOJ's guidelines. If Congress, here's Congress excluding certain foreign convictions because they don't meet due process requirements. So it would make no sense if by excluding foreign convictions but somehow sex offense still means something that's not a conviction, that that would mean that a foreign offense where there's no conviction at all somehow would be a sex offense even though there's been no due process at all. So this proves that even inside the definition of sex offense, when Congress says sex offense, it's referring always to an ultimate conviction. And that's how we know. It's right there. So why, what is the juvenile adjudication provision says the term convicted or variant thereof used with respect to a sex offense? So there's contemplating that you would use convict and sex offense. It can't be that sex offense includes convict every time because why would they say that? Well, the government actually points to no place in SORNA and I can find no place in SORNA where the term sex offense is not used in reference to a conviction. If you look at the... What about the provision that says any conduct that by its nature is a sex offense against a minor? I mean, that talks about conduct. Yes, but the court uses a categorical approach to determine whether a particular person's offense satisfies that definition. And in doing so, there has to be a conviction for you to know what the person categorically was convicted of. That's, this court uses a categorical approach and has always used a categorical approach. So a category, that's really actually an interesting point, which I'd like to make, which is that you can't know for sure what a person was convicted of or what, excuse me, what their offense was until they've been convicted. And I'd like to turn the court's attention to the next part of... Hold on. Am I wrong that federal judges that's sentencing all the time will make determinations that a crime is committed without a conviction on the books? So under the guidelines, general relevant conduct rule, yes. There are several guidelines that both permit and authorize a court, a district court, to make determinations about whether someone has committed a separate, uncharged, and unconvicted crime. Even a charged and acquitted crime. Well, that actually has been changed. Sure, but I mean, the case law hasn't changed. I agree with you, but that's, right? That's true. Under the relevant, the general relevant conduct rules that apply to the guidelines generally, but this is a specific instance of a commission choice to use an exact term, a term of art, a legislative term of art. The commission knows how to use convicted. It does know how to use it, but my, I guess I would say it doesn't have to say convicted when it has incorporated an exact legislative term of art that always means a conviction. There is no place in SORNA where it doesn't mean a conviction. To get to the bootstrapping of the definition of SORNA that you're suggesting we look at, you have to go to the commentary, right? I mean, the text of the guideline is just commit a sex offense, right? Right, but it's a sex offense, and I would argue, I do think there's an argument that we don't have to go to the commentary because this is a situation where the commission is implementing a single statute, and it's implementing, it's a SORNA guideline implementing SORNA statute where SORNA has created something that didn't exist before, which is this thing called a sex offense, and it has a multi-layered definition with limitations and exclusions, and Congress is telling us exactly what it means, and in every operational sense it's referring to a conviction in the statute. Is it possible that we could agree with you that we don't get to the commentary, we just look at the text, but the text says you lose? The text, well, the text, I would argue, does not say I lose because it's using a term of art, and when an agency uses a term of art that has a legislative definition, the ordinary rule of statutory construction in the area of administrative law says it's telling you exactly what it means, and it means this word. This isn't a word that just randomly appears in the guidelines. Had the commission used words that it normally uses when it's referring to relevant conduct, I think it would be a much harder case for me to make, but there is the commentary there, and the commentary confirms that it was actually importing a term of art from Congress, and it meant to use whatever, use what it means, and this is a great example of how the word committing used there, the reason that the commission uses committed there and not convicted is because of what I was referring to before, which is the temporal dimension of this enhancement. The enhancement is about the fact that someone is in an unregistered status, people don't know they're a sex offender, and they commit another sex offense during that period. So they could be convicted, say if it was a federal sex offense, they could be convicted of the sex offense and also the SORNA violation at the same time, and that person would be eligible for that enhancement. So it's a temporal reason why it says committed, which is possibly some of the, you know, when Congress uses the word committed, when it refers to an offense, it's still also talking about a conviction. So there's no reason to think that that's not what the commission is doing here. Would I understand correctly, counsel, that if we were to agree with you, we would be creating a circuit split, having all the other circuits that have looked at this gone the other way? You would be going a different way from the other circuits. That is true. But the job here of the- We've done it before. I'm just asking. I just want to make sure I understand correctly. I like how you said yes. Well, yeah. I mean, there's no way around that, but my answer would be that those courts have not perhaps engaged in what I'm asking the court to do, which is an impartial reading of what the commission actually did. Under the current standards of the kind of rigor of construction of words that the courts tend to use now. I don't think, I'm pretty sure that all of those cases really didn't engage in any analysis. There's no discussion in Lott, which is the case that sort of led the pack here, of any of these things that we're talking about. It just set up, says committed, that's the end of the story. But it didn't consider the fact that even Congress says committed and never uses the word conviction, and it's still talking about a conviction. And that is this case here, and we know this because in this specific instance, the commission has expressly and explicitly adopted a term of art that doesn't exist elsewhere and defined it exactly the way that SORTA defines it. So with that, unless you have any other questions? Thank you very much. Thank you. May it please the court. My name is Brian K. Samuelson, and I represent the United States. I want to apologize for my voice today. I'll certainly do my best to be understood. The defendant's sentence should be affirmed because the district court correctly applied this challenge, sentencing enhancement. And the question here really is, does the guideline mean what it plainly says it means? It says that the guideline applies when the defendant commits a sex offense against a  defendant. And the defendant commits an offense when they do the deed, right? You commit a murder when you kill somebody, whether you're later convicted or not. So by the plain text of the guidelines, a conviction is not required. And that plain reading is fortified by a host of other authorities. That includes the Supreme Court in Booker, which said that Congress intended to tie sentences to real conduct. It includes Congress that says no limitation shall be placed on the information that sentencing courts can consider. That's Section 3661. It includes the Sentencing Commission that says that sentences should be determined based on acts and omissions, i.e. on conduct. And it includes the commentary which says that a statutory reference does not require a conviction. And that's Section 1B, 1.3.7. All of those authorities suggest that the plain language does in fact control. And as a bonus, as your honors pointed out, the plain reading is also consistent with every other court that has examined this issue and this court's own unpublished decision in Winnick, which analyzed an analogous provision. I'd like to respond to a couple of the arguments my colleague brought up. One is this idea that the guideline, or I'm sorry, that SORNA doesn't use offense except to mean conviction. And I think there's two reasons that we see that that's not true. One is the definition of sex offender is somebody who has been convicted of a sex offense. So we know from that definition that a sex offense is something you are convicted of or can be convicted of, not the conviction itself. And the other is in the definitions of specified offenses against minors. Those include any conduct that by its nature is a sex offense. So the definition of sex offense includes conduct, not just convictions. I also want to address this idea that. Is that the sub 7i? Yes, your honor. Okay. Do you think we can look at the commentary? What's the, is the commentary interpreting the guy? We've said you can, we're going to look at commentary that interprets the guideline or whatever, I can't remember the exact language, but doesn't add to it. Right. And the guideline, or the commentary I'm referring to here isn't adding to the guideline, it's not altering the guideline. It's just confirming that the plain language of the guideline is in fact control, that the commission meant what it said. The commentary, a definite, commentary that purports to define terms that are in the guideline itself, is that interpreting? Yes, your honor. This is not a situation where there's a list of. It seems to me that it would be interpreting, but I'm just curious whether you think we can look to the commentary. I agree. I agree that that definition is just interpreting a phrase that's there and not adding to. I'd like to address this idea that the definition imports this surrounding context from SORNA into the sentencing context. And there's several reasons to think that that is not what happens. All the indications here are that's not what happens. One, I think it's very important that the definition or the commentary points to a statutory definition and not to a penalty provision where protections from the Fifth Amendment or the Sixth Amendment or a conviction would be critical. It's just pointing to a list of circumstances that amount to a sex offense and that is a list of conduct. It's also important that the statutory reference here doesn't change the context in which the information is being used in sentencing. At sentencing, this information is not being used to alter the statutory sentencing window or authorize a new penalty. It's used to calculate an advisory guidelines range. And we know the background rules that apply in that situation. Judges may find those kinds of facts by a preponderance of the evidence. No conviction or jury finding is required in that context. And finally, we know that it would be very easy to write this guideline to require a conviction because we've seen the Commission do it before. This includes 2L1.2 which includes language like if a defendant engaged in criminal conduct that resulted in a conviction. And certainly the Commission knows how to do that. It chose not to do that here. And as a result, all of those indications suggest the plain language should control. Mr. Samuelson, can I ask you about the other issue, the consecutive concurrent issue? What is the evidence in this record that the District Court turned its attention to 5G1.3? Yes, Your Honor. And here's the evidence. One, we know that 5G1.3 was discussed in the pre-sentence report. We know that the court considered that pre-sentence report. We know that the court was aware of its power to impose concurrent or consecutive sentences because it does impose this sentence to run concurrently to at least one of the state offenses. We know that the court is aware of the Indiana charges because it discusses them explicitly on the record. And we know that the court is grappling with how to fashion the federal sentence in light of the overall sentencing exposure in both state and federal court because we see the court doing that calculus explicitly. So the court understands its discretion to impose a concurrent or consecutive sentence. It is displaying a reasoned basis for exercising that discretion. What is it doing? You agree it's relevant conduct. No, Your Honor, I don't think it is relevant conduct. Indiana charges not relevant conduct? No, because it is not within the meaning of 5G1.3. Did it go into the calculation of the guideline? It did. It got eight levels for it, right? Yes, Your Honor, and there's a... Could it not be relevant conduct? There's a quirk of the guidelines here. It's relevant conduct because the enhancement asks if the defendant committed a sex offense. So that is relevant conduct under 5, I'm sorry, 1B1.3A4, which says any other information specified in the applicable guidelines. So it's relevant conduct for the enhancement under that. Relevant conduct under 5G1.3... But you're saying it's not relevant conduct under A1, A2, or A3? That's correct, and that's what 5G1.3 looks at. So it is relevant conduct for calculating the enhancement. It's not relevant conduct for calculating 5G1.3C, and what that means is this properly falls under 5G1.3D, which tells the court it should exercise its discretion about whether this is concurrent or consecutive. So the shall and C does not apply because it's not relevant conduct? That's correct. Okay, was any of it relevant conduct? I mean, he talks about related. The pre-sentence report and the sentencing transcript, they talk about whether it's, quote, unquote, related to, which I'm not sure where that language comes from because it seems to me it's either relevant conduct or not. That's the inquiry. Is any of it relevant conduct? I'm not sure. I think maybe, I don't think that it necessarily is. I mean, I just found the PSR to be a little bit confusing on how it was treating these other charges. They do use the word related conduct when discussing this at sentencing. I think part of that is nobody made the argument that this was relevant conduct under 5G1.3C, right? So the court wasn't specifically addressing that argument because nobody raised it. What we do know is that the court understood its discretion and was trying to fashion a sentence that reflected both state sentencing exposure and federal sentencing exposure and explained its chosen sentence through its analysis of the statutory sentencing factors. And certainly, on plain error review, that's an adequate explanation for what it was doing. Your Honor, because the sentence here was procedurally reasonable, the guidelines were correctly calculated, the sentence was adequately explained, I urge you to affirm. Thank you, counsel. So I'd like to make a couple points very quickly. One is I'd like to turn the court's attention to Section 2913, which is the initial registration requirement for SORNA. And it says that the registration requirement occurs or is triggered and has to be done before the sentence expires for the offense. Just uses the word offense. Doesn't say anything about a conviction there. So once again, Congress is using a term that doesn't use conviction with it, but it's necessarily referring to a conviction. So that's just another way that SORNA in its function always refers to a conviction. I noticed that my colleague here talks a lot about all of the sort of purposes and policy behind the general relevant conduct rule. And I just want to reiterate that Mr. Ramirez-Gomez is not challenging in this case anything about the way the relevant conduct rule works in the ordinary sense. He's not making a Sixth Amendment challenge. He's not saying that the judge here was supposed to hold a trial on this Indiana charges. But this question is one of pure interpretation of the guidelines. And the consequences of it may have constitutional dimension, but this is not a constitutional argument. It's one where I'm asking the court to use ordinary rules of statutory construction to see what the commission did in this specific instance. Yes, the commission uses other formulations sometimes when it wants to talk about needing a conviction. It also uses various formulations when it reiterates in a particular guideline to make very clear that it's talking about relevant conduct. But here because the commission chose to do the least necessary, but as much necessary to invoke a conviction, that's sufficient here for the court to say that's what it did. I would like to also say that 2P1.1 is not an analogous guideline. Because in that guideline the commission wasn't using a legislative term of art. Here we have a legislative term of art in the text of the guideline itself and defined explicitly to mean what it means in the statute. I would like to turn for just a moment to the question that you asked, Richard, about the consecutive concurrent question. And the government is now saying, and really for the first time, that this is not relevant conduct for purposes of 5G1.3C because it says it falls under the subsection 4. Does that even matter on plain error review? I mean if it was de novo maybe we're talking about something else. But plain error, he said, I'm either going to vary or impose a consecutive sentence. And he chose consecutive. I mean. That's not what he said. He actually didn't address this particular aspect of the guideline calculation at all. He said he was going to vary upward except he didn't because the eight levels applied. He never talked about whether it would be consecutive or not. And I think it's because the PSR also didn't talk about it. Of course he talked about whether it would be consecutive. Well, he didn't explain why. He didn't do what he did with all the other ones. Which, to me, the transcript reads, and what I believe really happened, it was just an oversight on the part of counsel not to talk about it. He was probably deflated from losing the enhancement. He just was, you know, thinking about the ones that the PSR talked about. Because if you look at the PSR you'll notice. That's not really an excuse, right? No, but it's probably what happened. Well, because the government talks a lot about how it wasn't raised. But there's a, you know, it wasn't intentional. It wasn't a strategy. The PSR, the first thing it does is it talks about discretion about the Indiana charges in a way that is not invoking 5G1.3C. And I think everyone was focused on thinking that that's probably what it was about. I think there's a mistake throughout the proceedings in this case to not notice. And I just want to read the relevant conduct rule with respect to this. And it's the relevant conduct rule includes all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by a defendant and all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. And I think that those provisions, A1, A2, A3, are the relevant conduct rules certainly cover the conduct that was used to increase the guideline range. And with that, I ask the court to reverse the decision. Okay. Thank you. The case will be submitted. Thank you, counsel, for your thoughtful arguments. You may call the next case.